# United States Court of Appeals for the Fifth Circuit

IN RE GOOGLE LLC,

*Petitioner.*

On Petition for Writ of Mandamus to the United States District
Court for the Eastern District of Texas
No. 2:25cv89-JRG, Hon. J. Rodney Gilstrap

## PETITION FOR WRIT OF MANDAMUS

MATTHEW L. MCGINNIS
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7000

MELISSA R. SMITH
GILLAM & SMITH LLP
303 S. Washington Avenue
Marshall, TX 75670
(903) 934-8450

JOHN E. SCHMIDTLEIN
BENJAMIN M. GREENBLUM
ALEXANDER S. ZOLAN
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
(202) 434-5000

*Counsel for Petitioner*

November 4, 2025

# CERTIFICATE OF INTERESTED PERSONS

No._____

IN RE GOOGLE LLC,

*Petitioner.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel of record certifies that Google LLC is a subsidiary of Alphabet Inc.

## A. Petitioner

Google LLC

## B. Attorneys for Petitioner

Melissa R. Smith
GILLAM & SMITH LLP
303 S. Washington Avenue
Marshall, TX 75670
melissa@gillamsmithlaw.com

# CERTIFICATE OF INTERESTED PERSONS
## (continued)

John E. Schmidtlein
Benjamin M. Greenblum
Alexander S. Zolan
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
jschmidtlein@wc.com
bgreenblum@wc.com
azolan@wc.com

Matthew L. McGinnis
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
matthew.mcginnis@ropesgray.com

Adam R. Safadi
ROPES & GRAY LLP
2099 Pennsylvania Avenue NW
Washington, DC 20006
adam.safadi@ropesgray.com

## C. Respondent

Branch Metrics, Inc.

## D. Attorneys for Respondent

Neal Manne
Alex Kaplan
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
nmanne@susmangodfrey.com
akaplan@susmangodfrey.com

John Schiltz
Danielle Nicholson
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
jschiltz@susmangodfrey.com
dnicholson@susmangodfrey.com

Zachary B. Savage
SUSMAN GODFREY L.L.P.
One Manhattan West
New York, NY 10001-8602
zsavage@susmangodfrey.com

Claire Abernathy Henry
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, TX 75604
claire@millerfairhenry.com

Steven C. Holtzman
20 Hillcrest Road
Berkeley, CA 94705
Sholtzman10@outlook.com

### E.    Nominal Respondent

Hon. J. Rodney Gilstrap
United States District Judge
100 East Houston Street
Marshall, TX 75670

Dated: November 4, 2025                    Respectfully Submitted,

*/s/ Melissa R. Smith*

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner believes that this Court's precedents clearly indicate that mandamus is required.  Petitioner therefore requests oral argument only to the extent that it would aid the Court in resolving this Petition.

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES...................................................................viii

STATEMENT REGARDING ORAL ARGUMENT ..................................v

ISSUE PRESENTED ...........................................................................1

INTRODUCTION .................................................................................1

FACTUAL BACKGROUND....................................................................7

    A.    The Parties And The Case........................................................7

    B.    Google's Motion To Transfer.....................................................9

    C.    The District Court's Order......................................................11

ARGUMENT .....................................................................................12

I.    THE DISTRICT COURT CLEARLY ABUSED ITS
    DISCRETION IN REFUSING TO TRANSFER THIS CASE
    TO THE NDCA.................................................................................13

    A.    Even Accepting Its Erroneous Weighing Of Individual
    Transfer Factors, The District Court's Balancing Of The
    Factors Was Itself Clearly Erroneous. ....................................16

    B.    The District Court Clearly Erred In Finding That The
    Witness Factors Did Not Weigh Strongly In Favor Of
    Transfer.................................................................................20

        1.    A Transfer Movant Need Not Identify Specific Trial
        Witnesses.........................................................................22

        2.    The District Court Ignored Google's Showing Of Witness
        Unwillingness...................................................................27

    C.    The District Court Clearly Erred In Finding That The
    Sources-Of-Proof Factor Weighed Only "Slightly" In Favor
    Of Transfer............................................................................29

    D.    The District Court Clearly Erred In Weighing The "Other
    Practical Problems" Factor......................................................33

    E.    The District Court Clearly Erred In Finding That The
    Court-Congestion Factor Weighed Against Transfer ...............33

F. The District Court Clearly Erred In Finding The Local-Interest Factor Neutral. ........................................................36

II. ABSENT MANDAMUS, GOOGLE HAS NO ADEQUATE APPELLATE REMEDY. ...........................................................39

CONCLUSION .....................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*10Tales, Inc. v. TikTok Inc.*,
2021 WL 2043978 (W.D. Tex. May 21, 2021) ..............................30, 31

*Adams v. Experian Info. Servs., Inc.*,
2021 WL 4891381 (E.D. Tex. Oct. 20, 2021) .......................................35

*Adaptix, Inc. v. HTC Corp.*,
937 F. Supp. 2d 867 (E.D. Tex. 2013) ................................................21

*City of New Orleans Employees' Ret. Sys ex rel. BP PLC v.
Hayward*,
508 F. App'x 293 (5th Cir. 2013) .......................................................30

*In re Chamber of Com. of United States of Am.*,
105 F.4th 297 (5th Cir. 2024) ......................................................17, 18

*Cheney v. U.S. Dist. Ct.*,
542 U.S. 367 (2004) ...........................................................................12

*In re Clarke*,
94 F.4th 502 (5th Cir. 2024) ...................................................... *passim*

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017) ............................................................6

*Gates Learjet Corp. v. Jensen*,
743 F.2d 1325 (9th Cir. 1984) .....................................................18, 19

*In re Google LLC*,
2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) .....................................31

*In re Google LLC*,
2022 WL 1613192 (Fed. Cir. May 23, 2022) ........................................6

*High River Ltd. P'ship v. Mylan Lab'ys, Inc.*,
353 F. Supp. 2d 487 (M.D. Pa. 2005) ................................................19

*In re Horseshoe Ent.*,
  337 F.3d 429 (5th Cir. 2003) ............................................................ 18

*In re Hulu, LLC*,
  2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ......................................27

*Jaffe v. LSI Corp.*,
  874 F. Supp. 2d 499 (E.D. Va. 2012) ................................................19

*In re Microsoft Corp.*,
  2023 WL 3861078 (Fed. Cir. June 7, 2023)......................................17

*In re Netflix, Inc.*,
  2022 WL 167470 (Fed. Cir. Jan. 19, 2022)........................................6

*In re Planned Parenthood Fed. of Am., Inc.*,
  52 F.4th 625 (5th Cir. 2022) .............................................................27

*In re Radmax, Ltd.*,
  720 F.3d 285 (5th Cir. 2013)................................................ 6, 18, 32

*Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision
  Care, Inc.*,
  2011 WL 2937365 (E.D. Tex. July 19, 2011) ...................................35

*In re Rolls Royce Corp.*,
  775 F.3d 671 (5th Cir. 2014)............................................................12

*In re SAP Am., Inc.*,
  133 F.4th 1370 (Fed. Cir. 2025)................................................ 22, 23

*In re TikTok, Inc.*,
  85 F.4th 352 (5th Cir. 2023) ..................................................... *passim*

*In re Toa Techs., Inc.*,
  543 F. App'x 1006 (Fed. Cir. 2013) ...................................................6

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008) .........................................................6

*United States v. Google LLC*,
  747 F. Supp. 3d 1 (D.D.C. 2024) ............................................. 7, 8, 21

*In re VirtaMove, Corp.*,
    2025 WL 2618803 (Fed. Cir. Sept. 11, 2025)......................................22

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004)..........................................................36

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) (en banc)...................................... *passim*

**Statutes**

28 U.S.C. § 1404(a)........................................................................ *passim*

Sherman Antitrust Act Section 2..........................................................7

**Other Authorities**

Fed. R. Civ. P. 45(c)(1)......................................................................20

17 Moore's Federal Practice - Civil § 111.13 (2025) ...............................18

## JURISDICTIONAL STATEMENT

Petitioner files this petition for a writ of mandamus from an order denying a motion to transfer venue under 28 U.S.C. § 1404(a) that was entered by the Marshall Division of the Eastern District of Texas. This Court has jurisdiction over this petition pursuant to 28 U.S.C. §§ 1294(1) and 1651(a).

## ISSUE PRESENTED

Whether the district court clearly abused its discretion by denying Google's motion to transfer this case to the Northern District of California—where both parties are headquartered and nearly all relevant witnesses are located—in the absence of any presence or evidence in, or connection of case events to, the Eastern District of Texas, and where the only factor purportedly weighing against transfer was average time-to-trial.

## INTRODUCTION

This case has no connection to the Eastern District of Texas ("EDTX"), other than Plaintiff's decision to file there. None of the parties is based in the EDTX, the events which gave rise to this dispute occurred outside the EDTX, and there is no witness who may be compelled to provide testimony at trial in the EDTX. The district court's decision to

1

allow this case to proceed in a forum with no connection to the case was patently erroneous.

One company headquartered in the Northern District of California ("NDCA"), Branch Metrics, Inc. ("Branch"), brought this antitrust suit against another company headquartered in the NDCA, Google. At the heart of the case is a product that Branch designed and developed in the NDCA. Unsurprisingly, and as recognized by the district court, the vast majority of relevant witnesses and evidence are located in the NDCA or on the West Coast. None of the claims has anything to do with conduct that occurred in or otherwise relates to the EDTX. There is not a single identified witness who resides in the EDTX. And yet Branch nonetheless chose to file in the Marshall Division of that court.

As Branch likely anticipated, Google immediately moved to transfer venue to the NDCA, a clearly more convenient forum. Six months later, the district court denied Google's motion. That decision was the product of several errors.

First, the district court gave dispositive weight to the "court congestion" factor, which is "a clear abuse of discretion." *In re Clarke*, 94 F.4th 502, 515 (5th Cir. 2024). The court found that this was the only

2

one of the eight transfer factors that weighed against transfer, with three factors weighing in favor of transfer. In denying Google's motion, therefore, the district court effectively ignored the multiple factors that it determined weighed in favor of transfer and instead assigned "dispositive weight" to what it conceded is the most "speculative" factor. Mandamus is warranted for that reason alone.

Second, the district court faulted Google for failing to specify which witnesses will be called at trial or to prove that any of them would be unwilling to testify in the EDTX, even though this Court has made clear that such putative failures at the very outset of litigation cannot weigh against transfer. At the same time, the court downplayed uncontroverted evidence that the vast majority of potentially relevant witnesses are located in or closer to the NDCA. If anything, the record below is overinclusive of potential witnesses—the alleged "failure" to identify which of the long list of NDCA-based witnesses will be called at trial was no failure at all. The court pointed to no basis whatsoever to think that the nearly universal mass of fact witnesses in or near the NDCA will come to Marshall for trial.

Third, the district court concluded that the diffuse locations of data servers throughout the country nearly neutralized the far more relevant location of the headquarters of the parties and relevant nonparties. The only authority the court below cited to support that conclusion was a decision granting mandamus *against* a district court that did precisely what the court below did here.

Fourth, the district court relied on a conclusory assessment to determine that the "other practical problems" factor weighed only slightly in favor of transfer. Substantial evidence makes clear that this factor weighs solidly in favor of transfer.

Fifth, the district court improperly treated as conclusive Branch's cited statistics about faster time-to-trial in the EDTX. In so doing, it ignored both this Court's admonitions that assessing court congestion amounts to "an uninformed guess" that cannot be dispositive, *Clarke*, 94 F.4th at 515, as well as Branch's own delay in filing suit for five years after the alleged conduct at issue occurred, which undermines any potential prejudice from slower time-to-trial in the NDCA. Allowing "time-to-trial" to be the sole basis for denial of an otherwise meritorious

motion to transfer will encourage and indeed sanction the very forum-shopping that § 1404(a) transfers are designed to combat.

Sixth, notwithstanding this case's overwhelming connection to the NDCA and that the "only connection between this case and the [EDTX] is [Branch's] choice to file there," *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 308 (5th Cir. 2008) (en banc) ("*Volkswagen II*"), the district court inexplicably found that the relative "localized interests" of the NDCA and the EDTX were effectively equivalent.

Mandamus is an extraordinary remedy, but this Court has ordered it in circumstances like these—where a plaintiff is engaged in blatant forum shopping and a defendant would be forced to litigate in a clearly inconvenient forum with no connection whatsoever to the underlying events through judgment, at which point appellate review could not remedy the prejudice that will have already occurred.  Indeed, this Court has already held that a district court clearly abused its discretion in denying transfer under precisely these circumstances—where "virtually all of the events and witnesses regarding the case . . . are in the transferee forum" and "nothing . . . ties th[e] case to the Marshall Division."  *In re TikTok, Inc.*, 85 F.4th 352, 360 n.7, 366 (5th Cir. 2023) (citations omitted).

Moreover, granting mandamus here aligns closely with rulings from the this Court and the Federal Circuit on writs emanating from denials of motions to transfer by this district court. *See, e.g.*, *In re Radmax, Ltd.*, 720 F.3d 285 (5th Cir. 2013); *see also In re Google LLC*, 2022 WL 1613192 (Fed. Cir. May 23, 2022); *In re Netflix, Inc.*, 2022 WL 167470 (Fed. Cir. Jan. 19, 2022); *In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017); *In re Toa Techs., Inc.*, 543 F. App'x 1006 (Fed. Cir. 2013).[1]

Because the district court's denial of Google's motion to transfer was a clear abuse of discretion and no other remedy is available, this Court should grant a writ of mandamus and order the district court to transfer this case to the NDCA—the venue where both parties are based, where the product at issue was designed and developed, and where the vast majority of individuals and third-party witnesses relevant to the claims are located.

---

[1] The Federal Circuit follows the law of the Fifth Circuit for motions to transfer venue from the EDTX. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

## FACTUAL BACKGROUND

### A. The Parties And The Case.

Google is a technology company based in Mountain View, California, which is in the NDCA. App.014–App.015. Google has no offices in the EDTX. App.016.

Branch is a technology company also based in Mountain View. App.014–App.015. It purports to offer a mobile device search service called Discovery Search that was designed and developed in the San Francisco Bay Area. App.027. For any disputes regarding Discovery Search, Branch requires its customers to bring claims in the NDCA. App.015. Like Google, Branch has no office in the EDTX. App.016. In general terms, Branch alleges that certain conduct by Google limited Discovery Search's distribution and utility on mobile devices powered by the Android operating system. None of the conduct at issue is alleged to have occurred in the EDTX.

Branch has given voice to these claims against Google before. In *United States v. Google LLC*, No. 1:20-cv-03010 (D.D.C.) (the "DOJ Litigation"), the United States and various states claimed, on behalf of Branch as an active third party in the litigation, that Google violated Section 2 of the Sherman Antitrust Act through contracts that

purportedly excluded Branch from a market for general search services. Branch appeared through counsel, and a Branch witness testified against Google at trial. The District of D.C. nevertheless rejected the theory regarding Branch. *United States v. Google LLC*, 747 F. Supp. 3d 1, 170 (D.D.C. 2024).

On January 31, 2025, five years after the DOJ Litigation began, and six months after that court rejected the claims regarding Branch, Branch filed a new antitrust case against Google in the EDTX purporting to rely on the same factual allegations and the same discovery as the DOJ Litigation.

Branch's Complaint relies on or quotes extensively from documents produced by Google and third parties in the DOJ Litigation, including documents from Samsung Next, AT&T, T-Mobile, Microsoft, Amazon, Verizon, and Apple. App.017. None of these third parties is based in the EDTX, and no witness employed by any of them was identified as residing in the EDTX. Samsung Next and Apple are based in the NDCA, and three others are based on the West Coast. App.017. Only AT&T is based in Texas, but in the Northern District, more than 100 miles from Marshall. *Id.*

The parties are presently engaged in fact discovery, due by April 17, 2026. Doc. 49. Trial witnesses must be identified by August 2026, and jury selection is set to begin by October 5, 2026. *Id.* The district court set these dates after Google moved to transfer. *Id.*

**B.    Google's Motion To Transfer.**

On April 4, 2025, Google moved to transfer the action to the NDCA pursuant to 28 U.S.C. § 1404(a). Doc. 19. Google explained, among other things, that the majority of sources of proof and witnesses are located in or near the NDCA. App.016; App.545–App.549. To show this, Google submitted two declarations by Aaron Sampson, Global Process Owner for Employee Data & Document Management at Google. App.032–App.037; App.552–App.560. Mr. Sampson's declarations included a list of the names and office locations of all current and former Google employees who were custodians for the documents from the DOJ Litigation on which Branch's Complaint relies. *Id.* Out of 102 total document custodians identified, 80 worked out of Google's offices within the NDCA, and none worked out of a Google office in the EDTX (because Google has no office in the EDTX), nor were any of their last known home addresses located within 100 miles of the EDTX. *Id.*

9

Google's motion also pointed out that the vast majority of third parties who produced documents in the DOJ Litigation on which Branch relies in its Complaint are located in or closer to the NDCA than the EDTX, and—again—none is located in the EDTX. App.017. To be sure, this was not a circumstance in which the plaintiff was lacking for information to identify a convenient forum—Branch's entire Complaint was based on documents produced in the DOJ Litigation, and the custodians of those documents were overwhelmingly based, like Branch, in the NDCA. Accordingly, Google argued that all four private-interest factors and one of the four public-interest factors (the relative localized interests of the venues) clearly weighed in favor of transfer, with the remaining factors being neutral or irrelevant.

On May 19, 2025, the district court granted Branch's motion for venue discovery, permitting Branch to serve written discovery on Google and to take venue-related deposition testimony. Doc. 40. Google produced documents in response to Branch's venue-related discovery requests, and Branch deposed Mr. Sampson. Thereafter, on June 30, Branch filed an opposition to Google's transfer motion. Doc. 54. Google

filed a reply on July 7, (Doc. 56), and Branch filed a sur-reply on July 14, (Doc. 57).

## C.   The District Court's Order.

On October 22, 2025, the district court denied Google's motion. Doc. 67. The court first concluded that the NDCA would have been a proper venue had Branch chosen to file there, App.002, then weighed the eight private- and public-interest factors.

Of the private-interest factors, the district court found that three weighed only "slightly" in Google's favor: the relative ease of access to sources of proof, the availability of compulsory process, and the other practical problems for trial. App.005, App.007, App.009. It deemed the remaining factor, the cost of attendance for willing witnesses, neutral, citing "Google['s] fail[ure] to specifically identify the identity of document custodians or other witnesses whom it plans to call." App.008.

As for the public-interest factors, the court found that the administrative difficulties flowing from court congestion weighed against transfer, pointing to "clear and unequivocal" statistics cited by Branch showing that the EDTX has fewer pending cases before it and a faster average time-to-trial. App.010. The court further found that the local

11

interest, familiarity of the forum with the governing law, and the avoidance of conflicts of law were all neutral. App.011–App.012.

In the end, despite finding that three factors weighed in favor of transfer, one weighed against, and the rest were neutral, the district court concluded that Google failed to carry its burden of showing that the NDCA is clearly a more convenient forum than the EDTX. App.012–App.013.

**ARGUMENT**

"There can be no doubt . . . that mandamus is an appropriate means of testing a district court's § 1404(a) ruling." *Volkswagen II*, 545 F.3d at 309. That is because, apart from mandamus, "[o]ther means for review are unavailable." *In re Rolls Royce Corp.*, 775 F.3d 671, 676 (5th Cir. 2014).

Mandamus relief is warranted when: (1) the petitioner's "right to issuance of the writ is clear and indisputable"; (2) there are "no other adequate means to attain the relief [the petitioner] desires"; and (3) the "writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380–81 (2004) (citations and internal quotation marks omitted). The petitioner's right to the writ is established "when there is

a clear abuse of discretion." *Volkswagen II*, 545 F.3d at 308.  That means that the district court "(1) relie[d] on clearly erroneous factual findings; (2) relie[d] on erroneous conclusions of law; or (3) misapplie[d] the law to the facts" so as to "produce a patently erroneous result."  *Id.* at 310 (citations omitted).

This Petition satisfies that standard.  Absent mandamus review, Google has no appellate remedy for the district court's clear abuse of discretion in denying transfer to the NDCA, as the harm stemming from that denial will have already occurred if Google is forced to litigate to final judgment in the EDTX, a clearly less convenient forum.

## I. THE DISTRICT COURT CLEARLY ABUSED ITS DISCRETION IN REFUSING TO TRANSFER THIS CASE TO THE NDCA.

For mandamus petitions challenging a failure to transfer under § 1404(a), this Court's review is guided by the eight private- and public-interest factors for comparing the relative convenience of venues. *Volkswagen II*, 545 F.3d at 315.  The private-interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that

make trial of a case easy, expeditious and inexpensive." *Id.* The public-interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (citation omitted). A case should be transferred when the balance of factors shows that the transferee venue is "clearly more convenient" than the transferor venue. *Id.*

Here, the NDCA is clearly a more convenient venue than the EDTX. This is a suit by one NDCA-based company against another, the vast majority of the evidence and the relevant party and nonparty witnesses are located in, or closer to, the NDCA than the EDTX, and Branch itself recognizes the superior convenience of the NDCA by compelling its customers to bring disputes regarding the product at the core of this lawsuit there. Moreover, *no* evidence and *no* witnesses are located in the EDTX. Thus, as Google explained below, *all* of the private-interest factors strongly militate in favor of transfer, as does at least the localized-interest public-interest factor; the rest are neutral or irrelevant.

In denying Google's motion and forcing it to proceed in the EDTX—a venue that bears no relationship whatsoever to the parties, the relevant nonparties, or the claims—the district court committed multiple errors and clearly abused its discretion.

First, accepting for the moment the court's clearly erroneous analysis as to each individual factor, its conclusion that the balance of those factors together should result in denying transfer was itself clearly erroneous. The court determined that *three* factors weighed in favor of transfer and that *only* the court-congestion factor weighed against transfer. In other words, the district court treated court congestion as singularly dispositive, which is contrary to this Court's precedent.

Separately, the district court clearly erred in how it weighed each of the four private-interest factors, as well as the first and second public-interest factors.

In short, the court's denial was patently erroneous and therefore warrants mandamus relief.

**A. Even Accepting Its Erroneous Weighing Of Individual Transfer Factors, The District Court's Balancing Of The Factors Was Itself Clearly Erroneous.**

First, the district court clearly erred in concluding that "the cumulative weight of the various factors" defeats transfer from the EDTX. App.012. Even if one accepts the court's determinations as to each individual factor—which, as outlined below, reflect several patent errors—it was a clear abuse of discretion not to nevertheless conclude that the NDCA was clearly more convenient.

The district court found that three factors were in favor of transfer, one was against, and the rest were neutral. Given that only the court-congestion factor was found to weigh against transfer, the district court effectively treated this factor as dispositive in denying transfer. Yet that is precisely what this Court has held constitutes a clear abuse of discretion. In *Clarke*, 94 F.4th at 515, this Court explained in no uncertain terms that "no factor" under § 1404(a) "is of dispositive weight." That is especially true of the court-congestion factor, the most "speculative" of the factors. *Id.*

While *Clarke* addressed a district court's decision to *grant* transfer solely on the basis of court congestion, *Clarke*'s holding applies with equal

force here: As this Court has observed, § 1404(a) was enacted to allow "defendants [to] protect themselves from the most blatant forum-shopping," like the kind Branch has engaged in by filing in a forum with no connection whatsoever to the claims, the evidence, the parties, or the witnesses. *See In re Chamber of Com. of United States of Am.*, 105 F.4th 297, 302 (5th Cir. 2024). But if transfer can be denied despite a finding that three case-specific factors weigh in favor (and none weigh against), *solely* on the basis of comparative court congestion, then every plaintiff could evade § 1404(a)'s protections simply by filing in the districts perceived to be the fastest at that moment, no matter how little connection—or, in this case, despite the lack of *any* connection—between the chosen venue and the case. For good reason, that is not the law. *See In re Microsoft Corp.*, 2023 WL 3861078, at *2 (Fed. Cir. June 7, 2023) (applying this Court's precedents to grant mandamus where "[t]he only factor the district court weighed against transfer was court congestion based on a 3- to 7-month time-to-trial difference, but Virtru offers no argument for why that difference should be afforded such great weight as to overcome the other factors weighing in favor of transfer"); *see also Chamber of Com.*, 105 F.4th at 302-03 ("The underlying premise of

§ 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 [the general venue statute] by subjecting defendants to venues that are inconvenient . . . .").

Moreover, although this Court cautions against a "raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score,'" *Radmax*, 720 F.3d at 290 n.8, it has found mandamus appropriate where, as here, the number of "factors favoring transfer substantially out weigh" the number that do not, *In re Horseshoe Ent.*, 337 F.3d 429, 435 (5th Cir. 2003). This case departs even from the transfer denials that this Court has found were a clear abuse of discretion, in that the district court denied transfer despite weighing *three* case-specific factors in favor of transfer and *only* weighing the speculative and non-case-specific factor of court congestion against transfer. Other courts, too, refuse to endorse forum shopping based on nothing other than time-to-trial statistics: "[T]he mere possibility that trial will be held sooner in the original court does not justify denial of transfer when it is otherwise supported by the convenience of the parties and the witnesses." 17 Moore's Federal Practice - Civil § 111.13 (2025); *see also, e.g., Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir.

1984) (noting that relative docket conditions are "accorded some, but not decisive, weight in transfer motions"); *Jaffe v. LSI Corp.*, 874 F. Supp. 2d 499, 506 (E.D. Va. 2012) ("While it is true that this case would almost definitely move with far greater dispatch on our docket, courts have refused to accord this concern controlling weight and have deemed it only 'a minor consideration where . . . the other convenience and justice factors weigh in favor of transfer' . . . if the EDVA's speed was afforded controlling weight in every venue transfer motion, cases better suited for resolution elsewhere would never make it out of the District."); *High River Ltd. P'ship v. Mylan Lab'ys, Inc.*, 353 F. Supp. 2d 487, 499 (M.D. Pa. 2005) ("[A]llowing an action to proceed in a forum simply because it is less congested and presumably more capable of disposing of the case quickly would invite forum shopping.").

Accordingly, in denying transfer despite determining that three factors weighed in favor of transfer and that only the court-congestion factor weighed against transfer, the district court clearly erred.

**B. The District Court Clearly Erred In Finding That The Witness Factors Did Not Weigh Strongly In Favor Of Transfer.**

The district court further erred in its assessment of the second and third private-interest factors—the availability of compulsory process for unwilling witnesses and the cost of attendance for willing witnesses.[2] The court found that the compulsory-process factor tipped only "slightly" in favor of transfer and that the cost-of-attendance factor was "neutral." App.007–App.008. Properly considered, however, each of these factors weighs strongly in favor of transfer to the NDCA.

Not a single nonparty referenced in Branch's Complaint is based in the EDTX. App.022. Google identified numerous nonparties for whom the NDCA is clearly more convenient, including Samsung Next and Apple (both headquartered in the NDCA) and Microsoft, T-Mobile, and Amazon (all headquartered on the West Coast). App.022. Branch confirmed the relevance of these third parties in its Initial Disclosures— and indeed, has served subpoenas on them. App.532–App.547. Given

---

[2] A trial subpoena may command attendance only "within 100 miles of where the person resides, is employed, or regularly transacts business in person" or, in more limited circumstances, "within the state where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1).

these third-party witnesses' locations, the NDCA has a clear advantage in securing their attendance through compulsory process. *See Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 874 (E.D. Tex. 2013) ("Transfer is favored when a transferee district has absolute subpoena power *over a greater number of non-party witnesses*." (emphasis added)).

The same is true of the relevant current and former Google and Branch employees. None of the former Google employees whose documents are referenced in Branch's Complaint worked or lived within 100 miles of the EDTX. App.546–App.547; App.555–App.560. Likewise, none of the Google witnesses deposed in the DOJ Litigation worked or lived within 100 miles of the EDTX. App.546; App.579. And Branch identified no current or former employee of its own who is located in the EDTX. There can be no question that willing witnesses' "cost of attendance" substantially weighs in favor of transferring this case to the NDCA. *See Volkswagen II*, 545 F.3d at 317 (noting the "'obvious conclusion' that it is more convenient for witnesses to testify at home and that '[a]dditional distance means additional travel time'"); *TikTok*, 85 F.4th at 362 ("Under *Volkswagen*'s 100-mile threshold, the Northern

21

District of California is a clearly more convenient venue for most relevant witnesses in this case.").

Despite the total absence of EDTX-connected witnesses and the overwhelming number of witnesses for whom the NDCA would be more convenient, the district court found that neither witness factor decisively supported transfer (and that one was even neutral) because Google (i) "fail[ed] to specify" which of the prospective party or nonparty witnesses that it identified "will be the ones called at trial" and (ii) further failed to show that any witness "will be unwilling to testify." App.007–App.008. Both conclusions are erroneous.

1. *A Transfer Movant Need Not Identify Specific Trial Witnesses.*

First, the district court cited no authority for its heightened trial-witness "specificity" requirement, and there is none. This Court has never held that a party seeking transfer must designate its trial witnesses together with that motion. To the contrary, the law is clear that a party seeking transfer need not "identify what witnesses they would actually be calling at trial and the specific testimony they would provide." *In re VirtaMove, Corp.*, 2025 WL 2618803, at *2 (Fed. Cir. Sept. 11, 2025) (citing *Volkswagen II*, 545 F.3d at 317 n.12); *see also In re SAP*

*Am., Inc.*, 133 F.4th 1370, 1375 (Fed. Cir. 2025) ("[T]he district court expressed an overly demanding standard in criticizing [movant] for failing to specifically identify individuals as trial witnesses."); *Volkswagen II*, 545 F.3d at 316 (granting mandamus where district court (EDTX) cited the movant's failure to "designate 'key' witnesses" as a basis to deny transfer).

This Court's approach makes good sense. Forcing a defendant to identify at the early stages of litigation who it will ultimately call at trial would amount to an impossible standard, particularly in complex litigation involving a substantial number of potentially relevant witnesses. Indeed, as the district court acknowledged, transfer motions must come "early in the life-cycle of a case knowing that many of the disputed issues will only become clear late in the process, *if not on the eve of trial.*" App.011 at n.1 (emphasis added). A litigant's inability to know with certainty, at the outset of a case, which of its potentially relevant witnesses will ultimately testify at trial thus cannot weigh against transfer. *See Volkswagen II*, 545 F.3d at 317 n.12 (rejecting the contention "that defendants seeking *forum non conveniens* dismissal [in which the movant bears a much heavier burden than necessary to obtain

transfer under § 1404(a)] must submit affidavits identifying the witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum" (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981))). To hold otherwise poses a catch-22 for a defendant: If, as the district court's holding would suggest, a defendant should wait to move to transfer until it can "specify" the witnesses who will be called or are unwilling to travel, the district court may deny the motion on the basis that the defendant delayed too long before requesting transfer. S*ee, e.g.*, *TikTok*, 85 F.4th at 362 (movant's delay can weigh against transfer).

In any event, Google provided more information than would be provided in a final trial witness list: It provided a far longer list of potential witnesses based upon all of the documents cited in the Complaint, easily demonstrating that the relative availability of compulsory process and the cost of attendance for willing witnesses strongly favor transfer to the NDCA. As the district court acknowledged, Google provided a comprehensive list of names and work locations of "every Google employee identified as potentially relevant based on Branch's allegations." App.007. Despite the district court's

characterization of this evidence as "vague," App.008, Google's list clearly demonstrated that the overwhelming majority of its current and former employees that are even potentially relevant here are NDCA-based, and that none are EDTX-based. App.021; App.035–App.037; App.546–App.547. Google also showed that the majority of third parties whose documents were quoted in the Complaint are located in or closer to the NDCA than the EDTX, and that—again—none are EDTX-based. App.022; App.546–App.547.

Thus, the district court's criticism that Google failed to name the specific individuals that it will call at trial simply misapprehends the evidence that Google provided: Google showed that the NDCA is clearly more convenient than the EDTX for virtually *all* of the witnesses that may be called, so it is irrelevant which of those witnesses "will be the ones called at trial." Where a party demonstrates that the availability of compulsory process and the cost of attendance for willing witnesses favor transfer *regardless* of the particular subset of witnesses who are ultimately called, it is clearly erroneous for a court to conclude, as here, that a movant's "lack of specificity" on trial witnesses "significantly weakens its position" as to these factors. *See* App.006.

Notably, the district court credited Branch's argument that the EDTX is a more convenient forum than the NDCA for "15 relevant third-party witnesses," and for four Google executives who Branch "intends to call at trial." App.008 (citing App.055 at n.16). That argument cannot bear the weight that the district court's opinion placed on it. For one thing, none of these witnesses is based in the EDTX. In fact, only four are based in Texas, and all of those in Austin, which is more than 100 miles from the EDTX (*i.e.*, outside the subpoena power of the Marshall Division). Nothing in the record suggests that these four potential witnesses (three of whom are affiliated with Google) would be any likelier to attend trial in the EDTX than in the NDCA, where their employer is headquartered. On the other side of the ledger, Google has identified *more than eighty* Google witnesses alone located in the NDCA. *See* App.035–App.037. "[E]ven if there were relevant witnesses in the [Eastern] District of Texas"—and, again, there are not—"that [would] not change the fact that the vast majority of witnesses . . . are located thousands of miles from [Marshall]." *TikTok*, 85 F.4th at 361 n.9.

### 2. *The District Court Ignored Google's Showing Of Witness Unwillingness.*

The district court's chiding of Google for not showing that any specific nonparty witness "would be unwilling to testify in this case" was also in error. *See* App.006–App.007. Although this Court has indicated that the compulsory-process factor may receive "less weight" absent a showing that a witness would be unwilling to testify, *In re Planned Parenthood Fed. of Am., Inc.*, 52 F.4th 625, 630–31 (5th Cir. 2022), it has never imposed any requirement to solicit affidavits from unwilling potential trial witnesses at the outset of a case, before a trial date is set, to ask whether, in the event they were designated for a trial on an unknown date, they would be willing to travel to voluntarily appear. "[W]here, as here, the movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness." *In re Hulu, LLC,* 2021 WL 3278194, at *4 (Fed. Cir. Aug. 2, 2021).

Here, Google amply demonstrated potential witness unwillingness by showing that virtually all of the nonparty witnesses are located closer to the NDCA than the EDTX, and that none of these witnesses bears any

connection to the EDTX. *See Volkswagen II*, 545 F.3d at 316–17 (compulsory-process factor weighs in favor of transfer where nonparty witnesses are located outside of the transferor court's subpoena power). And although the district court accused Google of being "equivocal" as to the current location of its relevant former employees, App.007, the evidence that Google provided regarding these employees' last work location clearly shows that they were overwhelmingly NDCA-based when employed by Google, App.555–App.559. There is no evidence from which to infer that such individuals have moved outside of the reach of the NDCA's subpoena power, let alone that they have since relocated to, or acquired some connection with, the EDTX.

In fact, the evidence instead shows why the NDCA is a far superior venue for this matter. Google showed that a key nonparty witness whose documents are quoted in Branch's Complaint at least two dozen times, Patrick Chang, is likely unwilling to testify in the EDTX. Mr. Chang sought to quash his trial subpoena in the DOJ Litigation on the ground that it was unduly burdensome to travel from his home in the NDCA to Washington, D.C. App.024. Although it purported to acknowledge this fact, the district court gave it no weight and simply concluded that Google

"does not show that [Mr. Chang] will be unwilling to testify in this case." App.006. But if pointing out that a nonparty witness previously sought to quash a subpoena in a similar case does not constitute a "showing" that such witness will likely be unwilling to testify, then what would? *See Volkswagen II*, 545 F.3d at 317 n.12 (rejecting the notion that § 1404(a) transfer requires witness affidavits, reasoning that "[i]n the *forum non conveniens* context, [where the movant's burden is higher], . . . we have rejected the imposition of a blanket rule requiring affidavit evidence" (internal quotation marks omitted)). The district court was silent on this point.

In sum, the district court clearly erred in how it weighed the second and third private-interest factors, both of which decisively favor transfer to the NDCA.

C.  **The District Court Clearly Erred In Finding That The Sources-Of-Proof Factor Weighed Only "Slightly" In Favor Of Transfer.**

The district court clearly erred in weighing another private-interest factor, the relative ease of access to sources of proof, which decisively favors transfer to the NDCA. Most sources of proof are created and maintained in California, where both parties are based (with none in the

29

EDTX), but the district court found that this factor weighed only "slightly" in favor of transfer and "much closer to neutrality" because of the "significan[ce] that both Branch['s] and the majority of Google's servers are closer to this District than NDCA." App.005. That reasoning runs afoul of this Court's precedents.

In assigning outsized importance to the locations of data servers, the district court all but "eliminated the [sources-of-proof] factor as a consideration," thereby tainting its transfer analysis. *See City of New Orleans Employees' Ret. Sys ex rel. BP PLC v. Hayward*, 508 F. App'x 293, 298 (5th Cir. 2013); *see also Volkswagen II*, 545 F.3d at 316 ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous."). Indeed, unlike the location of a party's headquarters, where it creates and maintains its documents, there is no practical "significan[ce]" to where the data center hosting an electronic document happens to be located; for a large technology company like Google, such data centers are spread throughout the country, from Oregon, to Iowa, to Virginia, while the documents themselves are actually created and maintained at its NDCA headquarters. *See 10Tales, Inc. v. TikTok Inc.*,

2021 WL 2043978, at *2 (W.D. Tex. May 21, 2021) ("While the relevant evidence may be equally accessible in both Districts electronically, considering such realities would be thwarting this Court's duty to adhere to 5th Circuit precedent. Thwarting this duty would be particularly egregious given that 10Tales failed to identify a single source of physical proof located in this District."). There was no record evidence below of any respect in which the location of data servers would make any difference whatsoever to the accessibility of relevant materials in this case.

The district court cited no Fifth Circuit precedent to support its conclusion as to the "significan[ce]" of the parties' data-server locations, because there is none. Instead, the court referenced a lone Federal Circuit decision, *In re Google LLC*, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021). But that decision simply stated that the court should consider both "the location where documents are created and maintained" and "the location of servers where documents are stored" in determining a forum's relative ease of access to sources of proof. *Id.* at *2. It does *not* support assigning anywhere near equal weight to these locations, which is what the district court effectively did here. In fact, the Federal Circuit,

31

following this Court's precedents, *criticized* the district court's overweighting of Google's server locations in its analysis, determining that it led to an erroneous transfer denial, and granted mandamus accordingly. *Id.* (holding district court erred in finding sources-of-proof factor neutral because it "analyz[ed] only the location of servers where documents are stored, rather than also considering the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval" (citing *Radmax*, 720 F.3d at 288)). Thus, the district court below committed the very error that the Federal Circuit found merited mandamus.

The location of the servers is, at most, neutral to the sources-of-proof factor. In citing the locations of Google's servers, Branch did not argue that the server locations made access to sources of proof less convenient, nor did the district court make such a finding. To hold that where documents are *stored* controls the sources-of-proof factor to the exclusion of where the documents were *created* is a logical fallacy.

In sum, the district court clearly erred in finding that the sources-of-proof factor weighed only "slightly" in favor of transfer, when the

analysis compelled by the caselaw would have weighed this factor strongly in favor of transfer to the NDCA.

### D. The District Court Clearly Erred In Weighing The "Other Practical Problems" Factor.

The district court's conclusory assessment that the fourth private-interest factor ("other practical problems") was only "slightly" in favor of transfer was similarly erroneous, as the court simply labeled Google's arguments under this factor "misplaced" without explaining why or citing any authority. *See Clarke*, 94 F.4th at 513 ("Section 1404(a)'s good-cause requirement prohibits a district court from relying on 'conclusory assertions' in considering the transfer factors."). As Google explained in the court below, this factor weighs solidly in favor of transfer given that: (i) the substantial evidence and number of key witnesses located in the NDCA means that trial there would be less burdensome and expensive than in the EDTX, and (ii) Branch's policy of requiring customers to litigate claims against Branch in the NDCA confirms Branch's own assessment that trial in the NDCA is convenient. App.025–App.026.

### E. The District Court Clearly Erred In Finding That The Court-Congestion Factor Weighed Against Transfer.

The district court also clearly erred in finding that the first public-interest factor, which considers the "administrative difficulties flowing

from court congestion," weighed against transfer. This factor was, at worst, neutral.

This Court has emphasized that the court-congestion factor is the most "speculative" of the transfer factors because "measuring congestion is easier said than done." *Clarke*, 94 F.4th at 515. Although the district court acknowledged as much in passing,[3] it essentially treated as dispositive statistics providing that "the median time to disposition is 7.4 months in [EDTX] but 30.5 months in NDCA, and the median time to trial is 25.9 months in [EDTX] but 40.2 months in NDCA — meaning transfer would likely delay resolution by over a year." App.010. Rather than recognizing the inherent limitations in measuring congestion—as this Court has instructed district courts to do—the court satisfied itself that nothing more was needed beyond bald statistics to find that the factor dispositively weighed against transfer. *See* App.010. The court's analysis was directly contrary to Fifth Circuit precedent.

---

[3] The district court cited no Fifth Circuit precedent in its analysis of the court-congestion factor. And though it cited a Federal Circuit decision for the proposition that it is "the most speculative" of the factors, it also suggested that the other transfer factors are no less speculative. *See* App.011 at n.1.

The district court did not even address Google's argument that Branch's lack of urgency in litigating this case undermines the significance of any statistical difference in time-to-trial between the NDCA and EDTX. Branch actively participated in the DOJ Litigation no later than May 2021. But it waited until January 2025, seven months after the rejection of its claims by that court, to bring this case and even then, it chose a forum that it reasonably should have anticipated would invite a transfer motion and venue discovery. App.549. Accounting for Branch's delay, the court-congestion factor cannot weigh against transfer.

Moreover, in complex litigations like this, this factor is particularly speculative, as complex litigations often exceed a district court's average time-to-trial due to the greater discovery and briefing demands. *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 2011 WL 2937365, at \*3 (E.D. Tex. July 19, 2011); *Adams v. Experian Info. Servs., Inc.*, 2021 WL 4891381, at \*5 (E.D. Tex. Oct. 20, 2021).

In sum, because the court-congestion factor is either neutral or irrelevant in this case, the district court's weighing of this factor against

transfer is yet another clear error contributing to the court's clear abuse of discretion in denying transfer.

### F. The District Court Clearly Erred In Finding The Local-Interest Factor Neutral.

Finally, the district court erred in finding that the "local interest in having localized interests decided at home" was "neutral" here. App.012. Properly considered, this factor, too, strongly weighs in favor of transfer.

The NDCA's interest in deciding this action is clear and overwhelming. Both parties are headquartered there, the vast majority of the individuals relevant to Branch's claims are located there, and the product at issue was designed and developed there; there is not a single specific event relevant to Branch's claims that is alleged to have occurred outside of the NDCA. App.027. These facts all give the residents of the NDCA a unique, particularized interest in the outcome of the action. *See In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) ("*Volkswagen I*") ("[J]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."). If jury duty is appropriately imposed on any group in this case, it is on the people of the NDCA.

36

By contrast, there is no particularized local interest in the EDTX. This is neither a Texas-centric suit nor a "global" antitrust enforcement action. App.549. Indeed, the "only connection between this case and the Eastern District of Texas is [Branch's] choice to file there." *See Volkswagen II*, 545 F.3d at 318.

Yet the district court found the localized-interest factor to be neutral, declaring simply that "the citizens of NDCA do not have the particularized interest in this case as Google suggests" because "the Fifth Circuit inquiry regarding this factor focuses on the 'events that gave rise to a suit' rather than 'the parties' significant connections to each forum.'" App.012 (quoting *TikTok*, 85 F.4th at 364). That is indeed this Court's law, but the district court offered little explanation for its inexplicable application of that law to find that the NDCA had no particularized interest in this case. This conclusion is plainly wrong.

For one, the "events that gave rise to a suit" *did* take place in the NDCA, and *none* took place in the EDTX. The Branch product at the center of Branch's antitrust claims was designed and developed in the NDCA. App.027. Yet the district court perfunctorily dismissed this fact. Moreover, the parties do not merely have "significant connections to" the

37

NDCA—they are in fact headquartered there and nearly all of their relevant employees reside there. This Court's precedents could not be clearer: The localized-interest factor "weighs heavily in favor of transfer when there is no relevant factual connection to the transferor district." *TikTok*, 85 F.4th at 364. That is most assuredly true here—the *only* factual connection between this case and the EDTX is that Branch chose to file there, which is irrelevant in determining a forum's localized interest. *See Volkswagen II*, 545 F.3d at 318. Accordingly, the district court's determination that this factor was merely "neutral" was another clear error.

\* \* \*

In sum, the district court's assessment of the § 1404(a) factors was patently erroneous, and its ultimate decision in denying transfer was a clear abuse of discretion. This is precisely the type of case that warrants mandamus, where "virtually all of the events and witnesses regarding the case . . . are in the transferee forum" and "nothing . . . ties th[e] case to the Marshall Division." *See TikTok*, 85 F.4th at 360 n.7, 366 (citations omitted).

## II. ABSENT MANDAMUS, GOOGLE HAS NO ADEQUATE APPELLATE REMEDY.

As this Court has explained, "a petitioner would not have an adequate remedy for an improper failure to transfer the case by way of an appeal from an adverse final judgment because [the petitioner] would not be able to show that it would have won the case had it been tried in a convenient [venue]." *Volkswagen II*, 545 F.3d at 318–19 (internal citations and quotation omitted). Further, the harms associated with an erroneous denial of a § 1404(a) transfer—"inconvenience to witnesses, parties and other[s]—will already have been done by the time the case is tried and appealed." *Id.* at 319.

Forcing Google to try Branch's suit to judgment in Marshall will require it to litigate over one thousand miles away from both parties' home forum—in a forum where *none* of the witnesses and evidence are located, and where the court lacks subpoena power over the third-party witnesses. This is exactly the situation that § 1404(a) was intended to prevent, and it is why mandamus is strongly warranted to correct the district court's clearly erroneous denial of transfer. Accordingly, "nothing . . . would render the exercise of [this Court's] discretion to issue the writ inappropriate" here. *Id.* at 319.

# CONCLUSION

This Court should issue a writ of mandamus directing the district court to transfer this case to the NDCA.

Dated: November 4, 2025

Respectfully Submitted,

*/s/ Melissa R. Smith*
Melissa R. Smith
GILLAM & SMITH LLP
303 S. Washington Avenue
Marshall, Texas 75670
melissa@gillamsmithlaw.com

John E. Schmidtlein
Benjamin M. Greenblum
Alexander S. Zolan
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
jschmidtlein@wc.com
bgreenblum@wc.com
azolan@wc.com

Matthew L. McGinnis
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
matthew.mcginnis@ropesgray.com

Adam R. Safadi
ROPES & GRAY LLP
2099 Pennsylvania Avenue NW
Washington, DC 20006
adam.safadi@ropesgray.com

*Counsel for Petitioner*

## <u>CERTIFICATE OF ELECTRONIC SUBMISSION</u>

I hereby certify that: (1) any required privacy redactions have been made; (2) the electronic submission of this document is an exact copy of any corresponding paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free from viruses.

Dated: November 4, 2025                    Respectfully Submitted,

                                           */s/ Melissa R. Smith*

41

# CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2025, I caused the foregoing Petition to be electronically filed with the United States Court of Appeals for the Fifth Circuit by using the Court's CM/ECF system, and served on the following by FedEx overnight mail:

**Counsel For Branch Metrics, Inc.**

Neal Manne
Alex Kaplan
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
nmanne@susmangodfrey.com
akaplan@susmangodfrey.com

John Schiltz
Danielle Nicholson
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
jschiltz@susmangodfrey.com
dnicholson@susmangodfrey.com

Zachary B. Savage
SUSMAN GODFREY L.L.P.
One Manhattan West
New York, NY 10001-8602
zsavage@susmangodfrey.com

Claire Abernathy Henry
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, TX 75604

claire@millerfairhenry.com

Steven C. Holtzman
20 Hillcrest Road
Berkeley, CA 94705
Sholtzman10@outlook.com

**District Court**

Hon. J. Rodney Gilstrap
United States District Judge
100 East Houston Street
Marshall, TX 75670

Dated: November 4, 2025           Respectfully Submitted,

*/s/ Melissa R. Smith*

## CERTIFICATE OF COMPLIANCE

This Petition complies with the type-volume limitations of Federal Rule of Appellate Procedure 21(d) because this brief contains 7,760 words excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).  This brief complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point font and Century Schoolbook style.

Dated: November 4, 2025                    Respectfully Submitted,

                                           */s/ Melissa R. Smith*